<u>NOT RECOMMENDED FOR PUBLICATION</u>

No. 22-5607

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 22, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MIREILLE M. LEE, | ) |
|     Plaintiff-Appellant, | ) ) ) |
| v. | ) ON APPEAL FROM THE UNITED ) STATES DISTRICT COURT FOR ) THE MIDDLE DISTRICT OF |
| VANDERBILT UNIVERSITY, | ) TENNESSEE ) |
|     Defendant-Appellee. | ) |

O R D E R

Before: SUHRHEINRICH, GIBBONS, and MATHIS, Circuit Judges.

Mireille M. Lee, proceeding through counsel, appeals the district court's dismissal of her employment-discrimination action against Vanderbilt University ("the University"), filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, et seq. The parties have waived oral argument, and this panel unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a). Because we find that Lee's complaint stated claims of gender discrimination and retaliation, we vacate the district court's judgment and remand for further proceedings.

In 2008, the University hired Lee as an assistant professor in its Department of History of Art ("the Department") with a secondary appointment in Classical and Mediterranean Studies. According to Lee's complaint, the University hired her as a "spousal hire" in order to retain her husband as a faculty member.

In 2015, Lee applied for a promotion to associate professor with tenure. The Department sought the opinions of qualified professors from other comparable institutions in Lee's field of research, all of whom recommended that Lee be promoted with tenure. The Department voted

unanimously to recommend to the University Provost, Susan Wente, and to the University Promotion and Tenure Review Committee ("PTRC") that Lee be promoted to associate professor with tenure. The dean of the University's College of Arts and Sciences, Lauren Benton, also recommended that Lee receive a promotion and tenure. Lee was denied the promotion and tenure in 2016.

On July 13, 2016, Lee filed a grievance against Department Chair Kevin Murphy, Wente, and the PTRC, alleging that they discriminated against her on the basis of her gender by denying her application for tenure and a promotion. She also alleged that she was wrongfully denied a "tenure clock extension for the birth of her child prior to . . . being evaluated for tenure and promotion in 2015." Without making any specific findings against the individuals named in the grievance, the grievance committee found merit to Lee's grievance and recommended that she be "given additional time and reviewed again for tenure during the 2018-2019 academic year" and receive an additional year on her employment contract. The Chancellor adopted the committee's recommendation. In 2018, Lee again applied for a promotion to associate professor with tenure. The new University Provost, John Geer, denied her application.

Based on these facts, Lee sued the University in state court for gender discrimination and retaliation. The University filed a motion to dismiss Lee's complaint for failure to state a claim, which the state court denied. Lee later voluntarily dismissed her state-court action and filed this case in the district court.

In her initial and amended complaints, Lee asserted that the University denied her tenure and a promotion in 2019 based on her gender and in retaliation for having filed a grievance complaining of discrimination. With respect to her claim of gender discrimination, Lee alleged that "[m]ale spous[es] hire[d] . . . as assistant professors on the tenure track are almost always granted a promotion to associate professor with tenure while female spous[es] hire[d] . . . as assistant professors are rarely granted a promotion to associate professor with tenure." She included in her complaint a chart showing that, out of six female spousal hires, five were denied tenure and one was granted tenure, and that eight out of ten male spousal hires were awarded tenure while two were not. Lee alleged that the decisions to deny her tenure in 2016 and 2019 were based

on "false and fraudulent misrepresentations made to the Provost and to the PTRC by agents and officers of [the University]" about her research record and her published work.

Lee further alleged that, during an August 2017 meeting with Murphy, the department chair, "Murphy raised his voice and in a loud and accusatory tone berated [her] because of the statements made in [her] grievance." She also alleged that Murphy assigned her "additional Departmental duties to interfere with her research progress needed for her 2018 tenure and promotion application." Lee stated that, "because of the resentment of the Department . . . members and its Chairman [over] her successful [g]rievance," she requested a department transfer in September 2017, which was denied.

With respect to the denial of her 2018 application for a promotion and tenure, Lee alleged that "Geer's explanation for his decision to deny [her] application . . . violated [the University]'s own policies and relied upon false and misleading information." Lee stated that, when she applied for and was denied tenure in 2016, Geer worked in Provost Wente's office and supervised the PTRC, and thus he had "knowledge of the false and fraudulent misrepresentations made to the Provost and to [the University]'s PTRC."

Lee asserted seven causes of action: gender discrimination and retaliation under Title VII and the THRA, and three breach-of-contract claims. After the University filed its motion to dismiss, Lee moved for leave to file a second amended complaint that would add only one new paragraph—paragraph 15A. The court granted the University's motion for its pending motion to dismiss to be applied to the second amended complaint and allowed the University to file a supplemental brief addressing the additional material in the second amended complaint. But the parties later filed a joint motion to strike paragraph 15A, which the court granted.

The district court granted the University's motion to dismiss. Before addressing the substance of the complaint, the court considered Lee's argument that the University's motion to dismiss should be denied based on the law-of-the-case doctrine. Lee argued that, because the University's motion to dismiss was denied in the state-court proceeding, it was precluded from filing the same motion in response to her federal complaint. The district court rejected this argument, finding that the law-of-the-case doctrine did not apply. The court next concluded that

Lee's complaint failed to state claims of gender discrimination and retaliation under both federal and state law and declined to exercise supplemental jurisdiction over Lee's state law breach-of-contract claims. Lee filed a timely motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), along with a motion for leave to file an amended complaint. The district court denied both motions.

Lee now appeals. She argues that (1) the district court erred in concluding that her complaint failed to set forth plausible claims of gender discrimination and retaliation, (2) the court failed to consider the complaint as a whole in dismissing her claims of gender discrimination, (3) the court abused its discretion by applying federal pleading standards to her THRA claims and by reversing the state court's ruling on the THRA claims, and (4) the court abused its discretion by dismissing the complaint without allowing leave to amend.

We review de novo a district court's dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). To avoid dismissal, a complaint must put forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under this standard, a court may not "accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011).

Title VII prohibits an employer from discriminating against an individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The THRA, which similarly prohibits discrimination based on sex, was enacted to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972." Tenn. Code. Ann. § 4-21-101(a)(1). The legislature's intent was for "the THRA 'to be coextensive with federal law.'" *Parker v. Warren Cnty. Util. Dist.*, 2 S.W.3d 170, 172 (Tenn. 1999) (quoting *Carr v. United*

*Parcel Serv.*, 955 S.W.2d 832, 834-35 (Tenn. 1997)). "Accordingly, an analysis of claims under the THRA is the same as under Title VII of the Federal Civil Rights Act." *Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006). And although Lee raised state law claims, the normal federal pleading rules apply to all of her claims, including those brought pursuant to the THRA. *See Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010) (applying federal pleading requirements to state law claims in a diversity case).

As the district court recognized, Title VII plaintiffs need not allege the elements of a prima facie case under the familiar *McDonnell Douglas* framework to avoid dismissal.[1] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (holding that *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), sets forth an evidentiary standard, not a pleading requirement); *see also Keys*, 684 F.3d at 609-10. Rather, a complaint alleging discrimination and retaliation claims need only allege factual content sufficient to allow a court to "draw the reasonable inference" that the employer discriminated or retaliated against the plaintiff. *Id.* at 610 (quoting *Iqbal*, 556 U.S. at 678-79).

Read in the light most favorable to Lee and accepting all of its allegations as true, the complaint set forth sufficient facts to state a plausible claim of gender discrimination. Lee alleged that, during the review of both her 2016 and 2018 applications, external reviewers unanimously recommended that she be granted tenure. And in 2016, she received a unanimous vote in her favor from her department and the recommendation of the dean. In 2017, Lee's grievance, which raised the issue of gender discrimination, was found to have merit. Lee also alleged that eight out of ten male spousal hires were awarded tenure and two were not, while only one out of six female spousal

---

[1] Under *McDonnell Douglas*, a plaintiff alleging discrimination generally must prove that (1) "she was a member of a protected group," (2) "she was subjected to an adverse employment action," (3) "she was qualified for the position," and (4) "similarly situated non-protected employees were treated more favorably." *Jackson v. VHS Detroit Receiving Hosp.*, 814 F.3d 769, 776 (6th Cir. 2016). And a plaintiff alleging retaliation must prove that (1) she engaged in protected activity, (2) "this exercise of protected rights was known to the defendant," (3) "the defendant thereafter took an adverse employment action against the plaintiff," and (4) "there was a causal connection between the protected activity and the adverse employment action." *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008).

hires were awarded tenure. Although the district court correctly noted that Lee did not explain how the male spousal hires who were granted tenure were similarly situated to her beyond the fact that they were spousal hires, the facts alleged in the complaint, taken together, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see James v. Hampton*, 592 F. App'x 449, 461 (6th Cir. 2015).

The dissent says that Lee failed to state a claim because she did not allege that Vanderbilt generally treats men better than women. In fact, Lee's allegations do suggest that male spousal hires in her department have a better chance of getting tenure than their female counterparts. In any event, Lee's discrimination claim requires her to show that she individually suffered discrimination because of her sex, not that her employer generally treats men better than women. *See Bostock v. Clayton Cnty.*, 1731, 1741 (2020).

The dissent also faults Lee for failing to allege that the male spousal hires who received tenure were situated similarly to her. In doing so, the dissent, like the district court, applies an element of the *McDonnell Douglas* framework at the motion to dismiss stage, which is inappropriate. *Swierkewicz*, 534 U.S. at 512. The dissent cites no case where a plaintiff had to allege with specificity that similarly situated employees who were not part of her protected class were treated more favorably than she was in order to survive a motion to dismiss. *Cf. Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (explaining standard that applies at summary judgment).

Lee's complaint also alleged a plausible claim of retaliation. Title VII forbids an employer from "discriminat[ing] against any of [its] employees . . . because [an employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

Lee alleged that the decision to deny her a promotion and tenure in 2019 was in retaliation for the grievance she filed in 2016. She also alleged that, in August 2017, Murphy raised his voice at her and berated her "because of the statements made in [her] grievance." In addition, she alleged

that Murphy assigned her "additional Departmental duties to interfere with her research progress needed for her 2018 tenure and promotion application."

In analyzing Lee's retaliation claim, the district court first considered whether she had sufficiently alleged that she suffered an adverse employment action. The court noted that the parties agreed that the 2019 denial of promotion and tenure constituted an alleged adverse employment action but found that neither the August 2017 incident with Murphy nor the alleged assignment of additional Departmental duties amounted to materially adverse employment action. The court also determined that Lee had not alleged adequate facts from which it could infer that there was a causal connection between her grievance and the 2019 denial of a promotion and tenure.

We disagree. Although there is a lack of temporal proximity between Lee's 2016 grievance and the denial of her promotion and tenure application in 2019, sufficient facts are alleged in the complaint to allow one to reasonably infer that there was a causal connection between the two events. Lee's allegations about her August 2017 interaction with Murphy and his assigning of additional Departmental duties—although they may not amount to adverse employment actions in and of themselves—allow for the inference that Murphy harbored some retaliatory animus against Lee. Lee alleged that this animosity went beyond Murphy, citing "resentment [among] the Department of History of Art members and its Chairman because of her successful [g]rievance." She averred that, in 2018, a member of the committee reviewing her promotion and tenure application informed the University's Equal Employment Opportunity Office that members of the Department were "angry" with Lee because of her grievance. Lee further alleged that the Department, which had voted unanimously in favor of her promotion and tenure in 2016, cast a divided vote in 2019 despite her application being stronger than before. And according to the complaint, Dean Geer relied on this divided vote when he denied her application.

The district court found no allegations in the complaint to support an inference that Dean Geer knew about Lee's grievance and that the grievance influenced his decision to deny her tenure in 2019. But Lee alleged that she filed her grievance in 2016 against Murphy, Provost Wente, and the PTRC. She further alleged that, in 2016, Geer worked in Provost Wente's office, supervised

the PTRC, and "had involvement in [her] application for promotion and tenure for Provost Wente." It is not unreasonable to infer from these facts that Geer had knowledge of Lee's 2016 grievance. Further supporting the causal connection, Lee alleged that Geer's explanation for his decision to deny her promotion and tenure application violated University policies, noting that he measured her productivity over a longer period of time than provided for in the University's written policy on promotion and tenure. She also alleged that he misinterpreted the positive letters submitted on her behalf by external reviewers and mischaracterized her record.

The district court faulted Lee for making conclusory allegations and not setting forth enough factual details. For example, the court explained that it could not infer that the allegedly berating comments made by Murphy to Lee in August 2017 resulted from her grievance because she did not "alleg[e] any facts regarding the substance of what Murphy said, or regarding any other relevant context of this conversation." While such factual detail may be necessary at the summary judgment stage or at trial, "to demand such detailed pleading at the motion to dismiss stage disregards 'the continuing viability of the short and plain language of Federal Rule of Civil Procedure 8.'" *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 583 (6th Cir. 2012) (quoting *Keys*, 684 F.3d at 609). We find that, taken together, Lee's allegations sufficiently state a plausible claim of retaliation.

The dissent says that neither the berating meeting nor the assignment of additional duties was an adverse action. But those are factual questions inappropriate for resolution on a motion to dismiss. Moreover, even if the meeting and additional duties were not in themselves adverse actions, they may support an inference that Lee's eventual termination was retaliatory.

As noted above, Lee argues the district court erred by applying federal pleading standards to her THRA claims and reversing the state court's ruling on those claims, and by dismissing her complaint without allowing leave to amend. In light of our conclusion that Lee's complaint should not have been dismissed for failure to state a claim, we need not address these arguments.

Lee asks that, on remand, the case be assigned to a different district court judge because Judge Richardson was employed by the University as a law professor immediately preceding his nomination to the bench and "one of his law professor colleagues is referenced as an actor in the

[c]omplaint." Our authority under 28 U.S.C. § 2106 to remand a case to a different judge "is an extraordinary power and should rarely be invoked. . . . [R]eassignments should be made infrequently and with the greatest reluctance." *Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669, 683 (6th Cir. 2002) (ellipsis in original) (quoting *United States v. Winters*, 174 F.3d 478, 487 (5th Cir. 1999)). In determining whether reassignment is necessary, we consider:

> (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006). Lee did not move for recusal in the district court; therefore, there is nothing in the record from which we can determine whether reassignment is warranted.

Finally, although Lee does not address this aspect of the district court's decision, the court declined to exercise supplemental jurisdiction over Lee's state law breach-of-contract claims because it had dismissed her remaining claims. *See* 28 U.S.C. § 1367(c)(3). Given our decision to remand the matter for further proceedings on Lee's gender discrimination and retaliation claims under Title VII and the THRA, on remand, the district court must reconsider whether to exercise jurisdiction over the breach-of-contract claims.

For these reasons, we **VACATE** the district court's judgment and **REMAND** for further proceedings consistent with this order.


**SUHRHEINRICH, Circuit Judge, dissenting.** I would affirm the judgment because the district court rightly determined that Lee failed to allege facts sufficient to support her claims of gender discrimination and retaliation.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quoting *Trombly* at 557). Lee's complaint is a textbook example of a complaint that is merely "consistent with a defendant's liability." It, therefore, fails to state a claim for relief and was properly dismissed.

Lee, who is female, sued Vanderbilt University because she was not given tenure. She alleges that this was on account of discrimination and retaliation. In support of this claim, Lee alleged that some males were treated differently than some females at Vanderbilt. She supplied a chart showing an alleged disparity between male "spousal hires" who were granted tenure and female "spousal hires," but she did not allege any facts or context that could make the chart probative of discrimination. The chart failed to allege during what time frame the hires were made, in what departments the hires were made, or the relevant experience of the different hires. In short, the chart is too bare to support any inference whatsoever, let alone one of gender discrimination. *See Chappell v. GTE Prod. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) ("conjecture and speculation are insufficient to support and inference of [gender] discrimination"); *Simon v. NuTone, Inc.*, 62 F.3d 1418 (6th Cir.) 1995) (Table), 1995 WL 456363, at *4-5; *see also Haskell v. Kaman Corp.*, 743 F.2d 113, 121 (2nd Cir. 1984).

Moreover, the allegation regarding "spousal hires" does not support a claim for gender discrimination based on a protected class. Lee did not allege that males in general are treated more favorably than females at Vanderbilt. Nor did Lee attempt to identify a male professor who was similar to herself in all relevant aspects, but who was treated more favorably. *Ercegovich v.*

*Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *see also Storrs v. Univ. of Cincinnati*, 271 F. Supp. 3d 910, 928 (S.D. Ohio 2017) ("'similarly situated' comparator is nearly identical in all factors of employment, including, *inter alia*, education, experience, and research productivity.")  In fact, completely at odds with her assertion of gender discrimination, the only similarly situated individual Lee did identify is a female colleague who was granted tenure when Lee's application was denied.[2]

"Where, as here, the complaint alleges facts that are merely consistent with liability (i.e., being [a woman] and being denied a [promotion]) as opposed to facts that demonstrate discriminatory intent (i.e., disparate impact or direct evidence), the existence of obvious alternative explanations simply illustrates the unreasonableness of the inference sought and the implausibility of the claims made."  *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 505 (6th Cir. 2013).

Lee's allegations of retaliation are similarly insufficient.  Lee alleges in her complaint that after she failed in her first bid for tenure, she filed a grievance against Kevin Murphy, Chair of the Department of History of Art, Susan Wente, Provost and Vice Chancellor for Academic Affairs, and Vanderbilt's Promotion and Tenure Committee (PTRC) in which she asserted that the denial of tenure was motivated by discrimination.  Lee also asserted that she was "denied a tenure clock extension which Defendant Vanderbilt provides to faculty on the tenure track who become parents or suffer serious health problems prior to being reviewed for tenure and a promotion."  Lee alleged that the Grievance committee found merit to her grievance, and she was ultimately granted additional time to be reviewed for tenure and an extension on her contract.  Lee alleged that the Grievance committee did not make any specific findings regarding the individuals who were the

---

[2] Oddly, the majority opinion ignores this allegation.

subject of the grievance.  Lee did not allege who was on the Grievance committee or who was notified about her grievance.  No one disputes that filing the grievance was protected activity.

In support of her claim of retaliation, Lee alleged that Murphy, her department chair, berated her about the grievance.  Lee provided no specifics in her allegation regarding the conversation or the substance of her supervisor's complaint.  Regardless, this single incident of verbal reprimand does not constitute an adverse employment action as a matter of law.  *See Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013) (multiple written reprimands did not rise to the level of an adverse employment action).

Lee also alleged that Murphy assigned her "additional Departmental duties to interfere with her research progress needed for her 2018 tenure and promotion application."  But the complaint is devoid of any "factual content that allows the court to draw the reasonable inference" of material adversity from Lee's allegation.  <u>Iqbal</u>, 556 U.S. at 678.  Lee did not allege how the assignment of duties was an adverse action or how it interfered with her research progress.  To the contrary, Lee actually alleged that, despite the additional Departmental duties, her subsequent application for tenure and promotion was significantly strengthened.  Even assuming that the addition of duties could be an adverse action, Lee failed to allege any facts that would make that inference plausible. *See Wheat v. Fla. Parish Juv. Just. Comm'n*, 811 F.3d 702, 708 (5th Cir. 2016) ("mere assignment of janitorial duties, without further description or detail about what those duties actually were, does not state a materially adverse action); *Grimes v. Miami Dade Cnty*. 552 F. App'x 902, 905 (11th Cir. 2014) (per curiam) ("Nevertheless, the adjustment in her job duties in 2008 was not an adverse employment action, because it was not a material change in the terms, conditions, or privileges of employment."); *see also Morales-Vallellanes v. Potter*, 605 F. 3d 27, 37-38 (1st Cir. 2010) (the temporary redistribution of duties within the employee's job description was not an adverse

employment action); *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) ("Purely subjective injuries, such as dissatisfaction with a reassignment . . . are not adverse actions[;] . . . an employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.").

Finally, Lee alleged that the denial of her second application for tenure was retaliatory. There is no question that the denial of tenure is a materially adverse employment action, but Lee failed to connect that action with her protected activity. Lee alleged that Dean Geer, who denied her second tenure application, had worked in the office of the Provost, had supervised the PTRC when Lee first applied for tenure, and had knowledge of false statements that were made regarding Lee. She also alleged that during her second tenure review, Geer violated Vanderbilt's policies and relied on false and misleading information. Assuming one could infer from Lee's allegations that Geer knew of her grievance, that alone would be insufficient to support a reasonable inference of retaliation 31 months later, and Lee did not allege that Geer took any other action against her. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all.").

Despite multiple opportunities, Lee failed to amend her complaint to allege any facts that would nudge her "claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. Her complaint was properly dismissed.

For these reasons, I would affirm the district court, and I respectfully dissent.


                              ENTERED BY ORDER OF THE COURT

                              Deborah S. Hunt, Clerk